NOT DESIGNATED FOR PUBLICATION

No. 117,956

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KIMBERLY WHITE,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Barton District Court; MIKE KEELEY, judge. Opinion filed April 13, 2018. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Ashley R. Iverson*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and MCANANY, JJ.

PER CURIAM: Following a traffic stop on June 11, 2016, for failure to stop at a traffic control device, Kimberly White was arrested on suspicion of driving under the influence of alcohol (DUI). In accordance with the Kansas implied consent law, K.S.A. 2015 Supp. 8-1001, the arresting officer read White all of the implied consent notices except for those associated with a potential criminal prosecution for refusal of any test deemed consented to under the Kansas implied consent law. More specifically, the officer advised White as follows:

1

"1. Kansas law (K.S.A. 8-1001) requires you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol or drugs or both.

"2. You have no constitutional right to consult with an attorney regarding whether to submit to testing.

"3. If you refuse to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, your driving privileges will be suspended for 1 year.

"4. If you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .15 or greater, your driving privileges will be suspended for 1 year.

"5. If you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .08 or greater, but less than .15, the length of suspension will depend upon whether you have a prior occurrence. A prior occurrence is a prior test refusal, test failure or conviction or diversion for an alcohol or drug related conviction as defined in K.S.A. 8-1013, and amendments thereto, or any combination thereof, whether before, on or after July 1, 2001.

"6. If you fail a test with an alcohol content of .08 or greater, but less than .15, and do not have any prior occurrences, your driving privileges will be suspended for 30 days.

"7. If you have a prior occurrence and fail a test with an alcohol content of .08 or greater, but less than .15, your driving privileges will be suspended for one year.

"8. Refusal to submit to testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both.

"9. The results of the testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both.

"10. After the completion of testing, you have the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing."

White consented to the breath-alcohol test, which revealed that her blood-alcohol content was above the legal limit. The arresting officer presented White with a DC-27 notice of suspension of her driving privileges.

White challenged the suspension at an administrative hearing. At the administrative hearing White argued that (1) the officer did not have the right to request the breath-alcohol test; (2) the implied consent law is unconstitutional and coercive under *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017); and *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017); and (3) her right to due process was violated when the officer gave an improper recitation of the law. The administrative panel upheld the suspension of her driving privileges, and the Kansas Department of Revenue upheld the suspension.

White appealed the agency decision to the district court where she argued that (1) the incorrect and misleading nature of the implied consent advisories required the agency action to be dismissed because they violated her due process rights; and (2) the officer violated her statutory rights by failing to provide all of the warnings that are required by the Kansas implied consent law before he requested the breath-alcohol test. The district court upheld her suspension, holding that the officer substantially complied with the statutory warning requirements prior to requesting that White submit to the breath-alcohol test and there was no potential that White would be prejudiced if the exact statutory warnings were not read.

White's appeal from the district court's decision brings the matter to us. She asks us to set aside the suspension of her driving privileges because (1) the Kansas implied consent law is facially unconstitutional because it violates the Fourth Amendment to the United States Constitution or, in the alternative, because (2) the arresting officer violated

her statutory rights by failing to provide her with the required notices. We will consider each of these claims in turn.

*Appellate Review Standards*

Because this is a challenge of an agency decision, we apply the Kansas Judicial Review Act (KJRA), K.S.A. 2017 Supp. 77-601 et seq., to determine whether "[t]he agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied." K.S.A. 2017 Supp. 77-621(c)(1). Challenges involving statutory and constitutional interpretation raise issues of law which we review de novo. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008), *overruled on other grounds by City v. Atwood v. Pianalto*, 301 Kan. 1008, 1011-13, 350 P.3d 1048 (2015). Here, in construing K.S.A. 2015 Supp. 8-1001, we give effect to the plain meaning of the statutes when possible and presume the constitutionality of these statute. *Ryce*, 303 Kan. at 906.

*Analysis*

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitutional Bill of Rights protect citizens from unreasonable searches and seizures. *State v. Moralez*, 297 Kan. 397, 404, 300 P.3d 1090 (2013). All warrantless searches are per se unreasonable subject to a few specifically established and well-delineated exceptions. *State v. Estrada-Vital*, 302 Kan. 549, 555-56, 356 P.3d 1058 (2015). The exceptions to the warrant requirement are: "'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.'" *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012) (quoting *State v. Fitzgerald*, 286 Kan. 1124, 1127, 192 P.3d 171 [2008]). The exception at issue

4

here is consent: whether White freely and voluntarily consented to the breath test that led to her license suspension.

*Issue One: Is the Kansas Implied Consent Law Facially Unconstitutional?*

The Kansas implied consent law, K.S.A. 2015 Supp. 8-1001, authorizes an officer to conduct an alcohol search during an investigation for DUI. Consent is a fundamental element of K.S.A. 2015 Supp. 8-1001(a), which provides that a driver consents to being tested for blood-alcohol content by driving on Kansas roadways. The notice provision of the Kansas implied consent law, K.S.A. 2015 Supp. 8-1001(k), which was also contained in the DC-70 form advisory given to suspects before testing, provided the foundation for the consent exception to the warrant requirement. It provided:

> "Before a test or tests are administered under this section, the person shall be given oral and written notice that:
>
> "(1) Kansas law requires the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs, or both;
>
> "(2) the opportunity to consent to or refuse a test is not a constitutional right;
>
> "(3) there is no constitutional right to consult with an attorney regarding whether to submit to testing;
>
> **"(4) if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence, if such person has:**
>
> **"(A) Any prior test refusal as defined in K.S.A. 8-1013, and amendments thereto, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older; or**
>
> **"(B) any prior conviction for a violation of K.S.A. 8-1567 or 8-2,144, and amendments thereto, or a violation of an ordinance of any city or resolution of any**

5

**county which prohibits the acts that such section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older;**

"(5) if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person's driving privileges will be suspended for one year for the first or subsequent occurrence;

"(6) if the person submits to and completes the test or tests and the test results show:

"(A) An alcohol concentration of .08 or greater, the person's driving privileges will be suspended for 30 days for the first occurrence and one year for the second or subsequent occurrence; or

"(B) an alcohol concentration of .15 or greater, the person's driving privileges will be suspended for one year for the first or subsequent occurrence;

"(7) refusal to submit to testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both;

"(8) the results of the testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both; and

"(9) after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing." (Emphasis added.) K.S.A. 2015 Supp. 8-1001(k).

The issue of consent under the Kansas implied consent law was addressed in *Ryce* and *Nece*.

In *Ryce*, K.S.A. 2014 Supp. 8-1025, which made it a crime to withdraw the implied consent for testing under K.S.A. 2014 Supp. 8-1001, was found to be facially unconstitutional because it punishes an individual for withdrawing consent when the right to withdraw consent is a corollary to the Fourth Amendment requirement that the consent to a search be freely and voluntarily given.

6

In the syllabus in *Nece*, the court stated:

> "A driving under the influence suspect's consent to breath-alcohol testing is not freely and voluntarily given if such consent was given following a written and oral advisory informing the suspect that he or she might 'be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties equal to or greater than those for the crime of driving under the influence.' The advisory is inaccurate and cannot serve as the basis for a voluntary consent in light of *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016), which holds that K.S.A. 2014 Supp. 8-1025 is unconstitutional."*Nece*, 303 Kan. 888, Syl. ¶.

The decisions in *Nece I* and *Ryce I* were handed down on February 26, 2016. That same day, the Kansas Attorney General issued a revised DC-70 form which conformed to the holdings in *Nece* and *Ryce* by deleting the unduly coercive provision (set forth in bold above) which used the threat of the driver being charged with a separate crime to induce the driver to consent to testing.

White was stopped and arrested on June 11, 2016. She was read the revised DC-70 which deleted the provision for the charging of a separate crime found to be unduly coercive in *Nece* and *Ryce*.

White does not challenge any other provision of the DC-70 notice she was provided other than the provision in the advisory regarding the charging of a separate crime for refusing to submit to a test. As the court stated in *Nece I*,

> "Advising a DUI suspect of the legal consequences of a test refusal—that is, of the difficult choices confronting a DUI suspect—does not necessarily unconstitutionally coerce consent.

> ""Concededly such a threat may be coercive in the sense that an accused would not have consented to the search in the absence of the threat. *But*

7

*not all coercion inducing consent to a search is constitutionally impermissible. If the officers threaten only to do what the law permits them to do, the coercion that the threat may produce is not constitutionally objectionable.'* [Citation omitted.]'" *State v. Moore*, 354 Or. 493, 502, 318 P.3d 1133 (2013), *opinion adhered to as modified on reconsideration*, 354 Or. 835, 322 P.3d 468 (2014).

"Accurately informing a driver of the lawful consequences that flow from his or her decision to refuse to submit to blood-alcohol testing 'ensures' that the driver 'makes an informed choice whether to engage in that behavior or not.' 354 Or. at 502-03 ('[T]he failure to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary.')." *Nece*, 303 Kan. at 895.

Thus, the provisions of the DC-70 advisory, after deletion of the provision for the charging of a separate crime for failure to submit to testing, remain valid and do not amount to unconstitutional coercion of a suspect driver's consent to testing.

Other than in *Nece* and *Ryce*, Kansas courts had consistently upheld the constitutionality of warrantless alcohol tests conducted pursuant to K.S.A. 2015 Supp. 8-1001. See, e.g., *Martin v. Kansas Dept. of Revenue*, 285 Kan. at 635 (stating "compulsory testing for alcohol or drugs through drivers' implied, even coerced, consent does not violate the Constitution; it is reasonable in light of the State's compelling interest in safety on the public roads").

White was not improperly induced into consenting to a breath test for alcohol. The advisory she was provided did not vitiate her consent to the test. Her consent to the test was voluntary and free from the coercion condemned in *Ryce* and *Nece*.

*Issue Two: Claimed Unconstitutionality of the Kansas Implied Consent Law as a Whole*

White claims that the modified advisories, which deleted the facially unconstitutional portions of the Kansas implied consent law, do not comply with the statutory requirement to give all the advisories, including the portion specifically struck down as unconstitutional in *Ryce*. White argues that the Legislature "intended to make the implied consent advisories warnings mandatory before a licensee can be requested to submit to testing." According to White, "[t]he officer can either give warnings that are in direct violation of the statute, or alternatively, provide the statutorily required warnings that are facially unconstitutional. Either way, under the current scheme, the licensee's rights are violated." Accordingly, White concludes that "[f]ailure to give the statutorily required and mandatory written and oral advisories . . . requires dismissal of the administrative action seeking to suspend an individual's driving privileges."

White's arguments, which involve matters of statutory and constitutional interpretation, raise questions of law over which our review is de novo. *State v. Dunn*, 304 Kan. 773, 819, 375 P.3d 332 (2016).

White's basic argument is that she was given the statutory warnings contained in a revised DC-70 form which eliminated the provisions found unconstitutionally coercive in *Ryce*, rather than the statutorily mandated advisories which included the provisions found to unconstitutionally coerce a suspect's consent to a Fourth Amendment search. She concludes that on one hand the failure to give all the statutorily mandated advisories is "in direct violation of the statute" and on the other hand giving the statutorily mandated advisories constitutes an unconstitutional coercion of consent under *Ryce*. A motorist may be charged and convicted of DUI based upon evidence that the motorist's blood alcohol concentration is .08 or more or if the motorist is "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." K.S.A. 2015

9

Supp. 8-1567(a)(1) and (3). White's argument leads to the inevitable conclusion that a driver is incapable of consenting to a breath test under any circumstances, and an officer may not administer a breath test under any circumstances, even if the driver wishes to undergo the test in order to demonstrate to the officer and memorialize for later consideration the fact that he or she was at the time of the stop stone-cold sober.

We are not persuaded by White's creative argument. In enacting the Kansas implied consent law, the Legislature provided a severability clause which provided that the remaining provisions of the Kansas implied consent law should be enforced in the event that provisions of the law are rendered unconstitutional. K.S.A. 8-1007 states:

> "This act shall be construed as supplemental to existing legislation; and if any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section."

Pursuant to this statute, the Kansas Attorney General amended the DC-70 to delete its unconstitutional provisions. As stated in *State v. Limon*, 280 Kan. 275, 304, 122 P.3d 22 (2005): "'[T]he enactment of a severability clause in a statute or series of statutes evidences the intent of the legislature that if some portion or phrase in the statute is unconstitutional, the balance shall be deemed valid.' [Citation omitted.]" Here, the Legislature unequivocally expressed its intent that if a portion of the Kansas implied consent law was found to be unconstitutional, the remaining provisions of the statute survive. The modified DC-70 evidences that fact.

Because K.S.A. 2015 Supp. 8-1001 is remedial in nature and is to be liberally construed, "'it is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient' when advising a driver of his or her rights under the Kansas implied consent law, provided that the notice in question 'conveyed the essentials

10

of the statute and did not mislead the appellant.' [Citation omitted.]" *Hoeffner v Kansas Dept. of Revenue*, 50 Kan. App. 2d 878, 883, 335 P.3d 684 (2014), *aff'd* No. 110,323, 2016 WL 6248316 (Kan. 2016) (unpublished opinion). In deleting the unconstitutionally coercive provisions of the statute and the original DC-70 advisory, the officer who arrested White substantially complied with our implied consent law in advising her. Substantial compliance did not require the officer to misadvise White of the possible adverse consequences of withdrawing her consent to testing.

*Conclusion*

Applying the Kansas Judicial Review Act (KJRA), K.S.A. 2017 Supp. 77-601 et seq., to the Kansas Department of Revenue's decision to suspend White's driving privileges, we conclude that the agency's action and the basis for its decision were not unconstitutional, and the district court did not err in affirming the suspension of White's driving privileges.

Affirmed.