NOT DESIGNATED FOR PUBLICATION

No. 117,900

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH E. THAYER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed September 21, 2018. Reversed and remanded.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

STANDRIDGE, J.: Following a bench trial on stipulated facts, Joseph E. Thayer appeals his convictions for possession of methamphetamine, possession of marijuana with a prior conviction, and possession of drug paraphernalia. Specifically, Thayer contends the district court erred in denying his pretrial motion to suppress the evidence seized by law enforcement. For the reasons stated below, we agree. Accordingly, the district court's decision to deny Thayer's motion to suppress is reversed and the case is remanded to the district court for further proceedings.

1

On October 2, 2015, the State charged Thayer with one count each of possession of methamphetamine, possession of marijuana with a prior conviction, possession of drug paraphernalia, and no proof of liability insurance. Thayer filed a motion to suppress requesting, in part, the suppression of all evidence seized by law enforcement. The district court held a hearing on the motion, where the parties presented the following evidence.

Former Hutchinson Police Officer Adam Weishaar testified that on September 28, 2015, he was on patrol when he observed that the driver of a green sports utility vehicle (SUV) was not wearing a seatbelt. Weishaar initiated a traffic stop of the SUV based on the seatbelt violation. Upon making contact with the driver, identified as Thayer, Weishaar noticed an odor of alcoholic beverage coming from the SUV. Weishaar also noticed that Thayer appeared "very twitchy," had trouble focusing and difficulty communicating, and was sweating profusely even though it was 70 degrees outside. Thayer was unable to produce his driver's license or proof of liability insurance. Based on his training, Weishaar was concerned that Thayer was impaired, so he asked Thayer to exit the SUV to perform field sobriety tests.

Because Officer Weishaar had noticed four machete-style knives and a smaller knife in the back seat of the SUV, Weishaar asked Thayer if he had any weapons on his person. Thayer stated that he had a knife on his belt. Weishaar conducted a pat-down of Thayer and discovered 13 knives around his waistband. After removing the knives, Weishaar asked Thayer if he had any other weapons on his person and Thayer responded that he did not think so. Weishaar continued to pat-down other parts of Thayer's body and felt "some sort of box" in one of Thayer's front pockets. Weishaar believed the item could be another knife. According to Weishaar, he asked Thayer for permission to search his pocket, and Thayer consented. Weishaar retrieved the box, which turned out to be a box

containing a smoking pipe and green vegetation consistent with marijuana. Weishaar also found a small baggie containing a crystal-like substance consistent with methamphetamine in Thayer's pocket.

After seizing the items from Thayer's pocket, Officer Weishaar had Thayer submit to field sobriety tests. Weishaar ultimately arrested Thayer for possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and failure to provide proof of liability insurance.

At the suppression hearing, the State offered into evidence a dash-cam video of the traffic stop, and the district court admitted the video into evidence. For reasons the State could not explain, the audio function did not work during some portions of the video, including during the time when Officer Weishaar claimed that Thayer consented to the search of his pocket. In addition, Thayer testified at the hearing. Thayer claimed that after Weishaar removed the knives from his waist, Weishaar searched his pocket without asking for permission to do so.

The State argued that the search of Thayer's pocket was lawful because it was necessary for officer safety and because Thayer had consented to the search. On the other hand, defense counsel argued that Officer Weishaar unlawfully detained Thayer beyond the purpose of the traffic stop and that Thayer never consented to the search.

After hearing testimony and argument from both sides, the district court took the matter under advisement and later announced its ruling denying Thayer's motion to suppress the evidence seized from his pocket. The district court first addressed the issue of consent. The court noted that after Officer Weishaar found the knives on Thayer's belt, further investigation was warranted for Weishaar's safety. But the court held that the State had not met its burden to show that Thayer had consented to Weishaar's search. Nevertheless, the court found that even if Weishaar had illegally searched Thayer, the

drugs found on Thayer's person would have been inevitably discovered during a lawful search upon Thayer's arrest for failure to provide proof of liability insurance.

The case proceeded to a bench trial on stipulated facts, where the district court found Thayer guilty of possession of methamphetamine, possession of marijuana with a prior conviction, and possession of drug paraphernalia. The court found Thayer not guilty of failure to provide proof of insurance, however, because Thayer had submitted proof of insurance to the court. The district court sentenced Thayer to 13 months in prison but granted him probation for a term of 18 months. Thayer timely appeals.

ANALYSIS

Thayer argues the district court erred in denying his motion to suppress. He alleges the court's reliance on the inevitable discovery exception to deny his motion was improper and speculative.

A district court's decision on a motion to suppress is subject to a bifurcated standard of review. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Substantial competent evidence is evidence that is both factually and legally relevant and sufficient for a reasonable person to rely upon it to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *Patterson*, 304 Kan. at 274. If the appellate court affirms the district court's factual findings, the appellate court will then review the district court's ultimate legal conclusion using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

The Fourth Amendment to the United States Constitution guarantees "'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *State v. Anderson*, 281 Kan. 896, 901, 136 P.3d 406 (2006). Section 15 of the Kansas Constitution Bill of Rights provides identical protection. 281 Kan. at 901. Under the constitutional standards, an officer may not detain a person without reasonable and articulable suspicion that the person has committed, is about to commit, or is committing a crime. *State v. Thomas*, 291 Kan. 676, 687, 246 P.3d 678 (2011). After detaining a person, an officer generally may not conduct a warrantless search:

> "[A] warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement. Those recognized exceptions are: 'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.' [Citation omitted.]" *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012).

The State bears the burden of proof to establish that a search or seizure that led to the discovery of the evidence in question was lawful. *Anderson*, 281 Kan. at 901.

Thayer does not dispute that Officer Weishaar's initial seizure to effectuate the traffic stop was legal. Weishaar observed that Thayer was not wearing a seatbelt in violation of K.S.A. 2017 Supp. 8-2503(a)(1). See *State v. Coleman*, 292 Kan. 813, 818, 257 P.3d 320 (2011) ("A traffic violation provides an objectively valid reason for conducting a traffic stop."). Nor does Thayer challenge Weishaar's continued detention of him beyond the traffic stop in order to investigate Weishaar's stated suspicion that Thayer was driving under the influence of alcohol or drugs. See *State v. Thompson*, 284 Kan. 763, 774, 166 P.3d 1015 (2007) (continued detention of motorist beyond traffic stop illegal unless law enforcement discovers information raising reasonable and articulable

5

suspicion of illegal activity while performing tasks incident to traffic stop). Finally, Thayer does not object to Weishaar's initial pat-down to search for weapons. See *State v. Hill*, 281 Kan. 136, 141, 130 P.3d 1 (2006) (during investigative detention or *Terry* stop, officer is allowed to frisk person seized for weapons if necessary for officer's personal safety) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). The only question before us is whether Weishaar's search of Thayer's pocket was lawful. The district court held that it was, relying on the inevitable discovery exception to the warrant requirement.

The inevitable discovery exception allows the admission of otherwise unconstitutionally obtained evidence if police eventually would have found that evidence by lawful means. *State v. Baker*, 306 Kan. 585, 590-91, 395 P.3d 422 (2017). The burden is on the State to demonstrate ultimate admissibility. *State v. Stowell*, 286 Kan. 163, 166, 182 P.3d 1214 (2008). "[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Nix v. Williams*, 467 U.S. 431, 444 n.5, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). For the exception to apply, the State must prove by a preponderance of the evidence that the evidence would have inevitably or ultimately been discovered by lawful means. *Baker*, 306 Kan. at 591.

Here, the district court held that the drugs found in Thayer's pocket would have been inevitably discovered during a lawful search upon Thayer's arrest for failure to provide proof of liability insurance. In support of its holding, the district court found evidence on the "tape" that Thayer was going to be arrested for failing to provide proof of insurance "irrespective of the finding the drugs in the pocket." Thayer argues there is no evidence on the tape or otherwise to support the district court's conclusion in this regard and it is therefore purely speculative.

6

The court's finding that Thayer ultimately was arrested for the offense of failing to provide proof of liability insurance and for the possession of drug contraband is supported by the evidence. There is no evidence, however, to support the court's finding that Thayer was going to be arrested for failing to provide proof of liability insurance before the contraband was discovered on his person. Failing to provide proof of liability insurance is a class B misdemeanor. K.S.A. 2017 Supp. 40-3104(g)(1). A law enforcement officer does not have to arrest a person suspected of committing the crime of failing to provide proof of liability insurance. Instead, a citation may be issued. *State v. Cox*, 41 Kan. App. 2d 833, 839, 206 P.3d 54 (2009). Absent discovery of the contraband, there exists a real possibility that Officer Weishaar did not intend to arrest Thayer for failing to provide proof of insurance. In fact, the district court specifically acknowledged in its ruling that no one asked Weishaar at the suppression hearing if, before discovering the contraband, Weishaar intended to arrest Thayer for failing to provide proof of insurance. The district court also found troubling, as do we, that discovery of the contraband occurred at a time when there was no audio on the video to indicate one way or another whether Weishaar intended—before discovering the contraband—to arrest Thayer for failing to provide proof of insurance. To that end, Weishaar could have allowed Thayer to contact another person in an effort to produce proof of insurance and bring that proof to the scene of the car stop. In fact, at the time of the bench trial in this case, Thayer did provide proof of liability insurance and he was not found guilty of that offense.

In sum, the State failed at the suppression hearing to provide any "demonstrated historical facts capable of ready verification or impeachment" to establish by a preponderance of the evidence that the contraband at issue here would have been inevitably discovered by lawful means. See *Nix*, 467 U.S. at 444 n.5. Instead of an affirmative factual showing to support inevitable discovery, the State merely invited the district court to speculate about a possible series of events under which the evidence may have been discovered. The fact that Thayer ultimately was arrested for failing to provide

7

proof of insurance in conjunction with the arrest for the drug offenses is insufficient to support, let alone establish by a preponderance of the evidence, that Officer Weishaar intended to arrest Thayer for failing to provide proof of insurance before finding the contraband. In the absence of any evidence, the district court erred in applying the inevitable discovery exception to the warrant requirement. Accordingly, we reverse the decision of the district court to deny Thayer's motion to suppress and remand for further proceedings.

Reversed and remanded.

\* \* \*

MALONE, J., concurring: I concur in the well-reasoned majority opinion that the district court's decision to deny Joseph E. Thayer's motion to suppress must be reversed. I write separately to state—as simply and concisely as I possibly can—why the inevitable discovery exception does not apply here to save Officer Adam Weishaar's unlawful search of Thayer's pocket.

The inevitable discovery exception allows the admission of otherwise unconstitutionally obtained evidence if police eventually would have found that evidence by lawful means. *State v. Baker*, 306 Kan. 585, 590-91, 395 P.3d 422 (2017). For the exception to apply, the State must prove by a preponderance of the evidence that the evidence unlawfully seized would have inevitably or ultimately been discovered by lawful means. 306 Kan. at 591. "[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Nix v. Williams*, 467 U.S. 431, 444 n.5, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). Stated differently, the State must prove by a preponderance of the evidence that the unlawfully seized evidence eventually *would have* been found by lawful means; not just that it *may have* been found by lawful means.

8

Here, the district court found that Weishaar unlawfully searched Thayer's pocket without his consent. For the inevitable discovery exception to apply, the State must show by a preponderance of the evidence that the items unlawfully seized from Thayer's pocket eventually would have been found by lawful means. The only way for the exception to apply under the facts here would be for the State to show that Weishaar was going to arrest Thayer solely on the no proof of insurance charge, in which case Weishaar would have searched Thayer's pockets incident to the lawful arrest for no proof of insurance and found the drug evidence.

The district court had the right idea when it found that Thayer "*was going to be arrested at least for the no insurance charge* and once the arrest occurred on that then his pockets would have been legally and lawfully searched and the drugs would have been found." (Emphasis added.) The district court also found that evidence on "the tape indicates that [Weishaar] was going to arrest Mr. Thayer [for no proof of insurance] *irrespective of the finding the drugs in the pocket*." (Emphasis added.) These findings—if supported by the evidence—would have justified applying the inevitable discovery exception to the facts here. The only problem is there is no evidence to support the district court's findings.

We have reviewed the hour-long "tape" of Thayer's arrest and booking into jail and there is no evidence on the tape to support a finding that Weishaar was going to arrest Thayer solely for having no proof of insurance. And as the district court noted in its ruling, Weishaar never testified that he was going to arrest Thayer solely for having no proof of insurance. All we know is that Weishaar arrested Thayer for having no proof of insurance along with the arrest for possession of drugs and drug paraphernalia. But this evidence does not support applying the inevitable discovery exception because the drug evidence was unlawfully seized—as found by the district court.

For whatever it may be worth, in my 27 years of judicial experience I do not recall reviewing a single case in which a law enforcement officer arrested a driver solely for having no proof of insurance. Officers usually give the driver a citation for such an offense unless the officer also has grounds to arrest the driver on a warrant or along with a felony charge. But my opinion here is based solely on the evidence presented at the suppression hearing. Because the State failed to show that the items unlawfully seized from Thayer's pocket eventually would have been found by lawful means, the district court erred in upholding the search based on the inevitable discovery exception.

* * *

BUSER, J., dissenting:  I dissent from the majority's holding that the district court erred in applying the inevitable discovery exception to the search of Joseph E. Thayer and the seizure of contraband. At the outset, this holding is predicated on a misreading of the district court's ruling. The majority states:

> "Here, the district court held that the drugs found in Thayer's pocket would have been inevitably discovered during a lawful search upon Thayer's arrest for failure to provide proof of liability insurance. In support of its holding, the district court found evidence on the 'tape' that Thayer was going to be arrested for failing to provide proof of insurance 'irrespective of the finding the drugs in the pocket.' Thayer argues there is no evidence on the tape or otherwise to support the district court's conclusion in this regard and it is therefore purely speculative.
>
> "The court's finding that Thayer ultimately was arrested for the offense of failing to provide proof of liability insurance and for the possession of drug contraband is supported by the evidence. There is no evidence, however, to support the court's finding that *Thayer was going to be arrested for failing to provide proof of liability insurance before the contraband was discovered on his person.* . . . Absent discovery of the contraband, there exists *a real possibility* that Officer Weishaar did not intend to arrest Thayer for failing to provide proof of insurance." (Emphases added.) Slip op. at 6-7.

Contrary to my colleagues' findings, the district court did not base its suppression ruling on a factual finding that Officer Adam Weishaar had decided to arrest Thayer for no proof of liability insurance *before* he searched his pockets and discovered the contraband, or that the officer would have arrested Thayer for no proof of liability insurance regardless of his decision to arrest him on the drug charges. In fact, the district court stated:

> "The second question the court had was in regards to the issue of inevitable discovery. The court, again would have been helped greatly had the officer been asked whether he was going to arrest on the no insurance. The book-in sheet—or the arrest sheet contained as part of the court file indicates the defendant was arrested for no insurance, plus it is clear on the tape that the officer, amongst the other charges, arrested—arrests the defendant for no insurance.
>
> "Therefore, notwithstanding the court's finding that the [S]tate has . . . not met its burden on the search, the court finds inevitable discovery would have taken place. That the defendant was going to be arrested at least for the no insurance charge and once the arrest occurred on that then his pockets would have been legally and lawfully searched and the drugs would have been found. So, in regards to the search of the evidence, for those reasons the motion [to suppress] is denied."

As is clear from the district court's ruling, the court determined from the booking sheet and Officer Weishaar's statements to Thayer recorded on the tape that the defendant was being arrested for, among other charges, no proof of liability insurance. As acknowledged by my colleagues, this factual finding was supported by substantial competent evidence.

Contrary to the majority's findings, however, the district court did not find that Officer Weishaar had decided to arrest Thayer for no proof of liability insurance before searching his pockets, or that the officer would have arrested Thayer for no proof of liability insurance even if he had not found the contraband and had not arrested him on the drug charges. Since these factual findings were never made by the district court, there

11

is no basis for my colleagues to conclude that the district court erred because there was no substantial competent evidence to support the findings.

More importantly, the majority errs as a matter of law in concluding that the district court improperly applied the inevitable discovery exception because there was insufficient evidence that "Officer Weishaar intended to arrest Thayer for failing to provide proof of insurance *before finding the contraband*." (Emphasis added.) Slip op at 8.

First, my colleagues provide no statutory or caselaw authority in support of their holding. I am unaware of any precedent that provides that when an officer simultaneously makes a legal arrest on one charge and an illegal arrest on other charges based on an illegal search, that the State must prove the officer would have made the legal arrest regardless of the illegal arrest.

Second, my colleagues disregard the district court's factual finding that a valid arrest was made in this case, only to base their holding on conjecture that "[a]bsent discovery of the contraband, there exists *a real possibility* that Officer Weishaar did not intend to arrest Thayer for failing to provide proof of insurance." (Emphasis added.) Slip op. at 7. Whereas the district court grounded its application of the inevitable discovery exception on the fact that a valid arrest was made, the majority bases its holding on speculation that maybe the arrest would not have been made. This resort to conjecture is contrary to a basic principle of the inevitable discovery exception. As cited by my colleagues in their majority opinion: "'[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment.' *Nix v. Williams*, 467 U.S. 431, 444 n.5, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984)." Slip op. at 6.

12

Here, the demonstrated historical fact that was readily verified by the evidence presented at the suppression hearing was that Officer Weishaar made a valid arrest of Thayer for no proof of liability insurance. As a result, the district court properly held that the contraband illegally seized from Thayer's pocket would have been inevitably discovered during a lawful search incident to Thayer's valid arrest for no proof of liability insurance. In summary, the inevitable discovery exception allowed the admission of otherwise unconstitutionally obtained contraband because the officer eventually would have found that evidence by lawful means. See *State v. Baker*, 306 Kan. 585, 590-91, 395 P.3d 422 (2017).

I would affirm the district court's ruling denying Thayer's motion to suppress and affirm the convictions.