NOT DESIGNATED FOR PUBLICATION

No. 122,982

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALLAS S. LITTRELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed November 19, 2021. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., WARNER and ISHERWOOD, JJ.

PER CURIAM: An anonymous male (Anonymous) came into possession of a cell phone containing a video of Dallas S. Littrell involved in sexual acts with a female child who Anonymous believed was Littrell's relative. Following his bench trial, Littrell was convicted of two counts of aggravated indecent liberties with a child and one count of aggravated endangering a child. Littrell now appeals, claiming the district court erred when it denied his motion to suppress the evidence contained on the cell phone Anonymous brought to the police department and additional evidence found as a result of

1

a search warrant later issued to search Littrell's home based in part on evidence reflected in the cell phone video. Upon careful review of the record, we find no error. We affirm.

FACTS

In January 2017, Anonymous came into the Kansas City, Kansas, police headquarters and requested to speak with a police officer about evidence of possible child pornography. Detective Cotarino Mendez met with Anonymous.

Anonymous suggested he had a video of an individual he knew as Littrell performing sexual acts with a female child. Mendez asked Anonymous to show him the video, which depicted a white male with several tattoos on his body and an adolescent female child. Anonymous advised he recognized the white male as Littrell because of his tattoos and suggested the adolescent female was Littrell's relative, K.L. Anonymous also said Littrell lived on Edith Street.

After meeting with Anonymous, Mendez researched Littrell and confirmed he lived on Edith Street. Mendez also searched local schools to determine whether a child named K.L. went to grade school in the general area. Mendez found K.L.'s school and discovered K.L.'s emergency contact was Littrell. Based on the information he had, Mendez requested a search warrant for Littrell's residence to look for evidence, including but not limited to any electronic devices, sex toys, and children's pajamas.

Mendez, armed with the search warrant, went to Littrell's residence along with other Kansas City, Kansas, police officers. Upon knocking, a male opened the door and called for Littrell. Littrell came up from the basement wearing only a towel around his waist, exposing his tattoos, and advised the officers K.L. was in the basement as she stayed home sick from school that day. Littrell's tattoos matched the man's tattoos from

2

the video. Mendez also noted Littrell's tattoos were in the jail's database, allowing him to identify the male in the video as Littrell.

During a search of the residence, officers found a loaded handgun under the pillow where K.L. was lying down. Officers found a picture of K.L. wearing a red pajama top with embroidery around the wrist and a ring on her finger. The officers took multiple electronic devices from the house and placed K.L. in police protective custody.

The State initially charged Littrell with sexual exploitation of a child, an off-grid person felony, and aggravated endangering a child, a severity level 9 person felony.

Shortly after the police conducted their search, Daniel Mott, who claimed to be Littrell's father, was cleaning out Littrell's bedroom when he found a tablet, a Kodak camera, and other electronic devices. Mott told Mendez the tablet and the Kodak camera had videos of Littrell doing sexually explicit things with a child. Mott said the child in the video was K.L., who was about seven years old. Mott recognized K.L.'s voice in the video and recognized Littrell's tattoos. Mendez took custody of the items and obtained a search warrant for permission to open those items.

The tablet and Kodak camera were subsequently searched at the Heart of America Regional Computer Forensics Laboratory (HARCFL), in Cass County, Missouri. During a search of the tablet, a video was found of a young female masturbating the suspect, Littrell, under a camouflage blanket. Mendez recalled seeing a similar camouflage blanket during his initial search of Littrell's residence. The young female was wearing a red shirt with embroidery on the wrist and a gold ring on her right hand with a green ink mark on the outside of her hand. Littrell was identifiable by his stomach and chest tattoos. Cartoons were playing in the background, and the child was crying in the video. The HARCFL laboratory determined the video was created in January 2017 in Wyandotte County.

Another video depicted an unidentified child (the child's face was blocked) in cartoon pajamas and a male with tattoos on his hands and knuckles performing a sex act. The tattoos on the hands and knuckles in the video matched tattoos on Littrell's hands. The videos were found in hidden files and renamed and reclassified so they were not readily recognizable. Mendez testified the same videos were located on multiple devices.

The State filed a first amended complaint and later filed a second amended complaint, ultimately charging Littrell with two counts of aggravated indecent liberties with a child, each an off-grid person felony; three counts of sexual exploitation of a child, a severity level 5 person felony; and aggravated endangering a child, a severity level 9 person felony. Littrell pled not guilty.

Littrell moved to suppress the evidence brought forth by Anonymous which supported a search warrant being granted to search his house. Littrell argued:

- Mendez' initial warrantless search of the cell phone brought to police by Anonymous was improper;
- Any evidence following the improper warrantless search should be suppressed;
- Each subsequent search warrant came from the initial cell phone search and should also be suppressed; and
- Even if the initial cell phone search was valid, the search warrant for Littrell's residence lacked probable cause.

The State responded, arguing Littrell's motion to suppress should be denied because private searches are not protected under the Fourth Amendment to the United States Constitution. The State claimed that by the time Mendez viewed the videos voluntarily provided to the police by Anonymous and the other electronic items delivered by Mott, Littrell's "privacy interests in the images were already frustrated." The State alternatively argued even if Mendez' search exceeded the scope of the private search, the

4

evidence seized under the search warrants should not be suppressed under the good faith exception. The district court denied Littrell's motion.

Littrell filed multiple motion to suppress any and all evidence obtained from the other electronic items seized by the officers during the first search of Littrell's house or those electronic items brought in by Mott. The district court denied his motions to suppress and his motion for reconsideration.

At Littrell's bench trial, the district court took the matter under advisement to review the evidence. Before announcing a verdict, the district court noted the State changed the dates on its second amended complaint, and the State agreed it would file a third amended complaint simply to reflect the new dates. Littrell was convicted of two counts of aggravated indecent liberties with a child and one count of aggravated endangering a child.

Littrell filed a motion for a new trial or, in the alternative, a motion for judgment of acquittal, again asking that the evidence obtained from the cell phone and search warrants be suppressed. Littrell also filed a motion for a downward departure based on his lack of criminal history. The district court denied the motions. Littrell was sentenced to imprisonment for life with a mandatory minimum sentence of not less than 25 years followed by lifetime parole for each conviction of aggravated indecent liberties with a child, and 6 months' imprisonment for the conviction of aggravated endangering a child. The district court ordered all sentences to run consecutive.

ANALYSIS

I.    THE DISTRICT COURT PROPERLY DENIED LITTRELL'S MOTION TO SUPPRESS
      EVIDENCE.

Littrell argues Mendez unlawfully participated in a warrantless government search and seizure of the cell phone brought to the police by an anonymous individual. Littrell contends Mendez should have first inquired as to how the source obtained the cell phone.

The standard of review of a district court's decision on a motion to suppress has two components. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion, however, is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The Fourth Amendment to the United States Constitution provides in relevant part:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Our Supreme Court has interpreted section 15 of the Kansas Constitution Bill of Rights  "as providing protections identical to the Fourth Amendment." *State v. Daino*, 312 Kan. 390, 396, 475 P.3d 354 (2020). A warrant is generally required to search a cell phone, so far as it is seized incident to arrest, though "other case-specific exceptions may still justify a warrantless search of a particular phone." *Riley v. California*, 573 U.S. 373, 401-02, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014).

*Standing*

Littrell argues the district court should have suppressed all evidence seized from the cell phone and from the subsequent search of Littrell's home as fruit of the poisonous tree.

The State explains the police did not need a warrant to search the cell phone because its contents were first viewed by a private individual before he turned it over to the police and allowed the police to view it. The State points out Littrell's argument presumes he even had a reasonable expectation of privacy in the cell phone.

A defendant must have standing to challenge the validity of a search under the Fourth Amendment. To establish standing to challenge a search or seizure, the challenging party must show he or she had a legitimate expectation of privacy in the property searched. The State bears the burden to show "the lawfulness of the search and seizure by a preponderance of the evidence" once standing is established. *State v. Talkington*, 301 Kan. 453, 476, 345 P.3d 258 (2015).

The record lacks evidence showing the cell phone brought to the police department by Anonymous was owned by Littrell. In fact, Littrell argues, "assuming *arguendo*"—for the sake of argument—that if the phone belonged to him, then the search could not have been lawfully conducted without his consent. It is Littrell's burden to establish the record to support his allegation. See *State v. Miller*, 308 Kan. 1119, 1157, 427 P.3d 907 (2018). Because Littrell never claimed ownership of the cell phone and Anonymous had possession of and access to the cell phone, Littrell did not have a reasonable expectation of privacy in the cell phone or its contents. Thus, we find Littrell has no standing to challenge what was found on the cell phone voluntarily brought to the police station.

Littrell claimed ownership of the other electronic devices, including the Kodak camera and tablet, brought to the police department by Mott. The devices were found in his bedroom, and he had an expectation of privacy as to those devices and their contents.

*Merits*

The Fourth Amendment's prohibition on unreasonable searches and seizures only encompasses governmental action and does not apply to a search or seizure by a private party on his or her own initiative. The Fourth Amendment does, however, protect against such intrusions if the private party acted as an instrument or agent of the government. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989); see *State v. Miesbauer*, 232 Kan. 291, 293, 654 P.2d 934 (1982). A private person can be considered an agent of the government if "the government knew of and acquiesced in the intrusive conduct, and [the private actor's purpose was] to assist law enforcement efforts or to further his or her own ends." *State v. Brittingham*, 296 Kan. 597, 602, 294 P.3d 263 (2013).

Evidence secured by a private individual, even if unreasonable, is constitutionally admissible in a criminal proceeding against the offended person. *U.S. v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).

> "It is well-settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information. Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information . . . . The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated. [Citation omitted.]" 466 U.S. at 117.

Additional invasions of an individual's privacy by a government agent "must be tested by the degree to which [the government agent] exceeded the scope of the private search." 466 U.S. at 115.

A warrantless search is per se unreasonable unless it falls within an exception to the search warrant requirement. *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). Again, a governmental search does not violate the Fourth Amendment if the individual's expectation of privacy has been frustrated and the governmental search does not exceed the scope of the private search. *Jacobsen*, 466 U.S. at 115, 117. The State cites *United States v. Starr*, 533 F.3d 985, 995 (8th Cir. 2008), explaining when the government re-examines materials following a private search, the government may intrude on an individual's privacy expectations without violating the Fourth Amendment, provided the government intrusion goes no further than the private search.

The search by Mendez did not violate Littrell's Fourth Amendment rights because Littrell's expectation of privacy was frustrated by Anonymous. The cell phone was opened by Anonymous without a passcode, and then he showed Mendez a sexually explicit video. The record also lacks any indication Anonymous acted as an instrument or agent of the government, and Mendez did not know of or acquiesce in the procurement of the cell phone or its contents.

The State persuasively explains the same analysis applies to the tablet, Kodak camera, and other electronic devices Mott provided to law enforcement. Littrell's expectation of privacy was frustrated when Mott opened and viewed the contents on the devices. Again, the Fourth Amendment prohibition on searches and seizures only encompasses governmental action and does not apply to a search or seizure by a private party on his or her own initiative. *Skinner*, 489 U.S. at 614. Mott explained to Mendez who he believed the individuals in the videos were and what they were doing. The record does not reveal Mendez knew of or acquiesced in Mott obtaining the other electronic

items with videos prior to him doing so, or that Mott's purpose was to assist law enforcement. The district court did not err in denying Littrell's motion to suppress the evidence contained on the tablet, camera, and other electronic devices.

II.    THE SEARCH WARRANT AUTHORIZING THE SEARCH OF LITTRELL'S HOUSE WAS SUPPORTED BY PROBABLE CAUSE.

Littrell argues Mendez failed to present an affidavit with sufficient facts to support a neutral magistrate to make a probable cause determination that evidence of illicit behavior would likely be found in Littrell's home. Littrell contends Mendez failed to independently establish the veracity and reliability of his anonymous source and failed to establish a nexus between the video Mendez viewed and Littrell's residence.

The State argues an ordinary person of reasonable caution would believe evidence of sexual abuse would be located in Littrell's home.

> "'When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard.' [Citation omitted.]" *State v. Powell*, 299 Kan. 690, 695-96, 325 P.3d 1162 (2014).

To determine whether an affidavit provides probable cause, the totality of the circumstances must be considered to make "'a practical, common-sense decision whether

. . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" 299 Kan. at 695.

The affidavit presented by Mendez in support of obtaining the search warrant for Littrell's house stated an anonymous male provided the police department with a video of Littrell performing sexual acts with a seven-year-old relative. The affidavit specifically stated:

> "[The anonymous male] showed me a video of the white male (Dallas Littrell) with several tattoos on his body with a young adolescent child (female) who had a purple in color strap-on dildo fastened to her. The young female was putting the dildo in Dallas' rectum while he was filming her. The child's face is never shown but the child was wearing what looked like comic book pajamas. This incident was taking place in a bedroom on a bed.
>
> "The anonymous male advised that the girl in the video is [Dallas'] [relative]]. He advised that he knows the male is Dallas because he recognizes Dallas' tattoos. I later viewed a Facebook profile for Dallas Littrell, and observed a star tattoo in a photograph which appeared to match the star tattoo observed in the video. Additionally, during the video, a view of the male's face comes onto screen for a brief moment. When I observed the photograph on Facebook, the male seen in the video appears to be Dallas Littrell. Additionally, I reviewed DMV records for Dallas Littrell. I viewed his Driver's License photo, which appears to match the photos observed on Facebook, and appears to match the male observed in the video.
>
> "The anonymous male provided additional information regarding where Littrell resides. He stated Littrell currently lives . . . [on] Edith [Street], Kansas City, Wyandotte County, Kansas. Littrell's mother lives at that residence as well. In reviewing DMV records, a different address on Edith was listed as Littrell's address. I called the school the relative is currently enrolled at, and confirmed that her address is listed [on] Edith. Additionally, I was informed that she was not at school today, and was called in by Littrell as ill. I also confirmed that Littrell . . . is listed as the first contact person in her school records."

11

Based on the above information contained in the affidavit, the district judge found probable cause to issue the search warrant for Mendez and other members of the Kansas City, Kansas, police department to search Littrell's house.

We evaluate the affidavit's sufficiency under a deferential standard to ensure the district judge had a substantial basis for concluding probable cause existed. See *Powell*, 299 Kan. at 695-96. Mendez' affidavit provided a substantial basis for the district judge to determine the tattooed man in the video was Littrell. Mendez watched the video and specifically noted a star tattoo on the man in the video that matched a star tattoo from one of Littrell's Facebook pictures. Mendez also briefly saw the male's face in the video which also matched pictures on Littrell's Facebook profile and Littrell's DMV records. Mendez confirmed where Littrell lived with his relative, providing the district judge a substantial basis to determine there was a fair probability Littrell not only performed sexually explicit conduct with his young relative, but also there was a fair probability evidence would be found in Littrell's house where he lived with his relative. The search warrant specifically authorized the seizure of any electronic devices that could contain evidence as well as children's pajamas and sex toys. Based on the fact there was a video recording, there was a substantial basis to conclude electronic devices would be found in Littrell's home. And based on the fact the video contained images of a sex toy and a child wearing pajamas, there was a substantial basis to conclude sex toys and children's pajamas would also be found in the home.

Common sense and prior cases tell us a person interested in child pornography is likely to keep it in the privacy of the person's home. *United States v. Riccardi*; 405 F.3d 852, 861 (10th Cir. 2005); *United States v. Potts*, 559 F. Supp. 2d. 1162, 1171 (D. Kan. 2008). In granting the search warrant, the district court appropriately determined there was a fair probability, based on the affidavit, evidence of the crime of sexual exploitation of a child could be found in Littrell's house.

Because we find there was probable cause to issue the search warrant, we decline to address whether the good-faith exception applies. We affirm.


Affirmed.